[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12854

Non-Argument Calendar

_____

DOLORES CALICCHIO,

Plaintiff-Appellant,

*versus*

OASIS OUTSOURCING GROUP HOLDINGS, L.P.,

PAYCHEX NORTH AMERICA, INC.,

OASIS OUTSOURCING HOLDINGS, INC.,

OASIS OUTSOURCING GROUP HOLDINGS, GP, LLC,

OASIS OUTSOURCING ACQUSITION CORPORATION, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:19-cv-81292-RAR

_____

Before GRANT, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Dolores Calicchio appeals the district court's grant of summary judgment to defendants Oasis Outsourcing Group Holdings, L.P.; Oasis Outsourcing Holdings, Inc.; Oasis Outsourcing Group Holdings, GP, LLC; Oasis Outsourcing Acquisition Corp.; and WRI II, Inc. (collectively "Oasis"); as well as Paychex, Inc. and Paychex North America, Inc. (jointly "Paychex"). She asserted claims for pay discrimination under the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), and gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a).

Calicchio was hired by Oasis to be its Chief Human Resources Officer ("CHRO"). Oasis's executive team consisted of Mark Perlberg, Chief Executive Officer ("CEO"); Kelley Castell, Chief Operating Officer ("COO"); Mike Viola, Chief Sales Officer, ("CSO"); and Joel Steigelfest, Chief Information Officer ("CIO"). Paychex acquired Oasis in December 2018. In granting summary

judgment, the district court struck the declaration of Vilma Petrov-sky.

On appeal, Calicchio first argues that the district court abused its discretion in striking Petrovsky's declaration. Second, she argues that summary judgment was not proper on her EPA claims for pay discrimination because there was a genuine dispute of material fact as to whether she identified proper comparators and showed Defendants' justifications for pay differences were pretext. Third, she argues that summary judgment was not proper on her Title VII claim for pay discrimination because there was a genuine dispute of material fact that similarly situated male employees were paid more than her based on her gender. Finally, she argues that summary judgment was not proper on her Title VII retaliation claim because there was a genuine dispute of material fact as to whether she was denied further employment because she complained about gender pay gap issues.

## I.

We review the exclusion of a witness based on a violation of Federal Rule of Civil Procedure 26 for an abuse of discretion. *Bearint ex rel. Bearint v. Dorell Juvenile Grp,, Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004).

Each party must disclose the names of individuals who likely have discoverable information, along with the subjects of that information, that the party may use to support its claims or defenses, unless the use would be solely for impeachment. Fed. R. Civ. P.

26(a)(1)(A)(i).  The parties are required to supplement incomplete Rule 26(a) disclosures.  Fed. R. Civ. P. 26(e)(1).  A party who violates Rule 26(a) or (e) is precluded from using the undisclosed witness unless the failure to disclose the witness "was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  In determining whether an undisclosed witness should be excluded under Rule 37(c), courts typically consider "the explanation for the failure to disclose the witness, the importance of testimony, and the prejudice to the opposing party."  *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008).

Here, the district court did not abuse its discretion in striking Petrovsky's declaration.  Petrovsky was not timely disclosed as a witness, and the nondisclosure was neither substantially justified nor harmless.  Petrovsky's declaration also was not used solely for impeachment, as Calicchio used it to support an element of her prima facie claims.  Accordingly, we affirm as to this issue.

## II.

We review de novo a district court's grant of summary judgment, "construing all facts and drawing all reasonable inferences in favor of the nonmoving party."  *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 919 (11th Cir. 2018) (quotation marks omitted).  Summary judgment is appropriate when the record evidence shows that "there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

The EPA prohibits employers from discriminating against their employees by paying their employees at different rates for the same work based on sex. 29 U.S.C. § 206(d)(1). We use a burden-shifting framework to analyze sex discrimination claims brought under the EPA. *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 590 (11th Cir. 1994). Under the EPA framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination in pay based on sex. *Id.* A plaintiff can establish a prima facie EPA discrimination claim "by showing that the employer paid employees of opposite genders different wages for equal work for jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions." *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003) (quotation marks omitted). The plaintiff's initial burden is "fairly strict," requiring her to show that she performed "substantially similar" work for less pay. *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992). In comparing whether the plaintiff's job is substantially similar to that of the alleged comparator, the focus is on the main duties of each job, not on the individual employees holding those jobs, or on incidental or insubstantial job duties. *Id.* at 1533. Although job titles are entitled to some weight in making this evaluation, they are not dispositive. *Mulhall*, 19 F.3d at 592.

In *Mulhall*, we held that the plaintiff met her burden of establishing a prima facie case by showing the position of Vice-President, Controller was substantially similar to her position as Vice-President, Administration. *Id.* at 595. We noted that the

Controller was primarily responsible for the company's economic well-being but was also responsible for administrative functions, and while Mulhall was primarily responsible for administration, monetary concerns permeated all aspects of her position. *Id.* at 594. Further, we noted that both positions required great effort, but a jury could conclude Mulhall's position required more effort because she was responsible for more diverse components compared to the relatively homogenous job tasks of the controller. *Id.* Finally, we reasoned that the difference in responsibilities: that "one vice president manages money primarily and people secondarily; the other manages people and things primarily and money secondarily," was not sufficient to conclude the positions were not substantially similar. *Id.* at 595.

If the plaintiff establishes a prima facie case, the employer may avoid liability by proving, by a preponderance of the evidence, that the pay differential is justified based on one of four affirmative defenses outlined in the EPA: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any factor other than sex. *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995); 29 U.S.C. § 206(d)(1). The defendants "must show that the factor of sex provided *no basis* for the wage differential." *Irby*, 44 F.3d at 954. Although the prior salary of an employee cannot solely justify a pay disparity, "there is no prohibition on utilizing prior pay as part of a mixed-motive, such as prior pay *and* more experience." *Id.* at 955. If an employer shows that a pay differential is justified based on one

of the four affirmative defenses outlined in the EPA, the plaintiff must rebut the explanation by showing with affirmative evidence that the employer's offered explanation is pretextual or otherwise offered as a post-event justification for a gender-based difference. *Id.* at 954.

Here, the district court did not err in granting summary judgment for Defendants because Calicchio failed to raise a dispute of material fact that Mayotte, Castell, Steigelfest, or Viola were valid comparators. There is no genuine dispute that the comparator's positions were substantially similar to Calicchio's because the primary job duties of each position are different.

Even if she established a valid comparator, summary judgment was still proper. Defendants met their burden of showing pay differences were based on factors other than sex, and Calicchio failed to sufficiently rebut Defendants' explanation for the pay difference because she does not identify affirmative evidence and instead relies on subjective testimony. Accordingly, we affirm as to this issue.

## III.

Under Title VII, it is unlawful for an employer to "discharge . . . or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] . . . sex." 42 U.S.C. § 2000e-2(a)(1). A plaintiff asserting intentional discrimination claims under Title VII "must make a sufficient factual showing to permit a reasonable jury

to rule in her favor." *Lewis v. City of Union City*, 918 F.3d 1213, 1217 (11th Cir. 2019) (en banc). A plaintiff "can do so in a variety of ways, one of which is by navigating the now-familiar three-part burden-shifting framework established by the Supreme Court in" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Under this framework, the plaintiff has the burden to establish her prima facie case. *Id.* If the plaintiff makes out her prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Id.* If the employer meets that burden, then the burden shifts back to the plaintiff to show that the employer's proffered reasons were merely pretext for unlawful discrimination. *Id.*

Title VII and the EPA have different burdens of proof. "A plaintiff bringing an EPA claim must meet the fairly strict standard of proving that she performed substantially similar work for less pay," but need not show discriminatory intent. *Miranda,* 975 F.2d at 1526. Under Title VII, "there is a relaxed standard of similarity between male and female-occupied jobs, but a plaintiff has the burden of proving an intent to discriminate on the basis of sex." *Id.* In order to prove that an employer treated a similarly situated individual outside of the employee's protected class more favorably, the employee must show that she and her proffered comparators were similarly situated in all material respects. *Lewis*, 918 F.3d at 1224. Generally, a similarly situated comparator will engage in the same basic conduct as the plaintiff, will be subject to the same

policies, have the same supervisor, and share the plaintiff's employment or disciplinary history. *Id.* at 1227–28.

A plaintiff can show pretext by demonstrating weaknesses, implausibility, inconsistencies, incoherencies, or contradictions in the proffered reason for the employment action such that a reasonable factfinder could find them unworthy of credence. *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007). If the proffered reason is one that may motivate reasonable employers, however, the plaintiff must "meet it head on and rebut it" instead of merely quarreling with it. *Id.* at 1350.

In the alternative to the *McDonnell Douglas* framework, a plaintiff can survive summary judgment if she presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Lewis*, 934 F.3d at 1185. This includes evidence that demonstrates suspicious timing, ambiguous statements, and other conduct from which an inference of discriminatory intent might be drawn; systemically better treatment of similarly situated employees; and that the employer's justification is pretextual. *Id.*

Here, Calicchio failed to raise a dispute of material fact that the difference in her pay resulted from intentional discrimination.[1]

---

[1] On appeal, Calicchio challenges only the district court's grant of summary judgment on her Title VII pay discrimination claim. Accordingly, she abandoned any challenge to her Title VII discrimination claims with respect to her

Even if she met her burden of establishing a prima facie case under the more lenient Title VII standard, Calicchio cannot show that any difference in her pay is the result of intentional discrimination. Defendants offered valid justifications for the differences in pay, and there is no genuine dispute of material fact that the justifications are not pretext. Moreover, Calicchio failed to establish a prima facie case by showing a convincing mosaic of intentional discrimination. The evidence relied upon is subjective and would not allow a jury to infer intentional discrimination. Accordingly, we affirm as to this issue.

## IV.

Title VII prohibits employers from retaliating against an employee because she engaged in statutorily protected activity. 42 U.S.C. § 2000e-3(a). Absent direct evidence of retaliation, we employ the *McDonnell Douglas* burden-shifting framework when analyzing retaliation claims. *Brown v. Ala. Dep't of Transp.,* 597 F.3d 1160, 1181 (11th Cir. 2010).

A prima facie claim of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there was a causal connection between her protected activity and the adverse action. *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012). A materially adverse employment

discharge from employment or denial of further employment. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

action is an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks omitted).

To show a causal connection, the plaintiff must show that (1) the decision-maker knew of her protected activity, and (2) the protected activity and adverse action were not wholly unrelated. *Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002). If the alleged retaliatory conduct occurred before the employee engaged in protected activity, the two events cannot be causally connected. *See Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1233 (11th Cir. 2006) (explaining that there was no causal link between the alleged retaliatory conduct and the plaintiff's complaint of harassment where the decision to decrease the plaintiff's work hours had been made and conveyed to the plaintiff when she was hired).

To meet its burden under the intermediate step, the employer must clearly explain the non-retaliatory reasons for its actions, but it need not establish those reasons by a preponderance of the evidence. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259-60 (1981). Finally, to show pretext, the plaintiff must show that the employer's proffered reason is false and that the true reason was retaliatory. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). In doing so, the plaintiff must meet the reason "head on" and rebut it and cannot succeed simply by disputing the wisdom of the reason. *Chapman v. AI Transp.*, 229 F.3d 1012,

1030 (11th Cir. 2000) (en banc).  And in rebutting the employer's nonretaliatory reason, the plaintiff must show that, but for her protected conduct, the employer would not have taken the alleged adverse action.  *Tolar v. Bradley Arant Boult Cummings, LLP*, 997 F.3d 1280, 1294 (11th Cir. 2021).

As an initial matter, there is no genuine dispute that Calicchio was informed that her employment would end before she raised gender pay gap issues with Perlberg, so she cannot state a claim of retaliation based on her discharge from employment.

Summary judgment was also proper on Calicchio's retaliation claim with respect to the denial of consideration for the role of Director of PEO Centralized Services with Paychex.  While Calicchio established a prima facie claim of retaliation, Defendants met their burden of explaining the legitimate, nonretaliatory justification.  Defendants viewed Calicchio as an HR executive and the position as a business operations role, and there is no genuine dispute of material fact that the justification is not pretextual.  Accordingly, we affirm as to this issue.

**AFFIRMED.**